AF/SF2019R00428

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Kevin McNulty |
| | : | |
| | : | Crim. No. 19-676 |
| v. | : | |
| | : | 18 U.S.C. § 1349 |
| | : | |
| RAYMUNDO TORRES | : | |

## INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

### COUNT ONE
### (Conspiracy to Commit Bank Fraud)

### Background

1.  At all times relevant to this Information:

    a.  Cash Flow Partners, LLC ("Cash Flow"), was a business-consulting firm with offices in New Jersey and New York.

    b.  Defendant Raymundo Torres ("TORRES") was a resident of New York and worked in the New York office of Cash Flow. He was a broker employed by Cash Flow, where he helped individuals obtain bank loans.

    c.  "Coconspirator 1" worked with TORRES. Coconspirator 1 corresponded with customers and collected supporting documentation, such as payroll records and tax forms, and assisted in the preparation of bank loan applications for submission to banks. Coconspirator 1 worked in the New Jersey office of Cash Flow.

d. The "Payroll Company" was a New Jersey corporation that provided payroll processing services and reports to its client companies.

e. Victim Bank 1 and Victim Bank 2 were federally insured financial institutions, as that term is defined in Title 18, United States Code, Section 20.

### The Conspiracy

2. From in or around March 2016 through in or around May 2018, in Bergen County, in the District of New Jersey, and elsewhere, defendant

RAYMUNDO TORRES

knowingly and intentionally conspired and agreed with Coconspirator 1 and others to execute and attempt to execute a scheme and artifice to defraud financial institutions, as defined in Title 18, United States Code, Section 20, namely, Victim Bank 1 and Victim Bank 2, whose deposits were insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of those financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

### Goal of the Conspiracy

3. It was the goal of the conspiracy for TORRES, Coconspirator 1, and others (the "Coconspirators") to obtain loans from Victim Banks, including Victim Bank 1 and Victim Bank 2 on the basis of false and fraudulent pretenses and representations.

## Manner and Means of the Conspiracy

4. It was part of the conspiracy that from in or around March 2016 through in or around May 2017, Cash Flow released internet advertisements and held seminars offering to assist low-income customers in obtaining loans. Customers contacted Cash Flow in hopes of obtaining loans in response to Cash Flow advertisements and seminars. Customers then submitted documentation supporting their bank loan applications to the Coconspirators at Cash Flow.

5. It was further part of the conspiracy that TORRES directed the Coconspirators to create false documentation to make customers' loan applications appear more financially viable than they actually were. The Coconspirators, including Coconspirator 1, falsified payroll records by inputting fictitious financial and employment information into template payroll documents from the Payroll Company. The Coconspirators, including Coconspirator 1, inputted similar fictitious financial and employment information into IRS tax forms. For instance:

   a. On or about June 22, 2016, TORRES sent an email to Coconspirator 1 identifying a customer loan applicant ("Customer 1"). TORRES requested that Coconspirator 1 create a fictional job for Customer 1 that paid more than the job that Customer 1 actually had in order to make it more likely that Victim Bank 1 would grant a loan to Customer 1.

   b. On or about June 29, 2016, Coconspirator 1 emailed TORRES and attached false IRS W-2 tax forms for 2014 and 2015, a false 1040 tax form, and false payroll records purportedly from the Payroll Company. The attached

3

documents contained the false information regarding Customer 1's employment and salary that TORRES had told Coconspirator 1 to include.

6. It was further part of the conspiracy that the Coconspirators submitted fraudulent loan applications, including the false documentation they had created to the Victim Banks, which then approved and paid out loans to Cash Flow's customers. For example, on or about July 11, 2016, TORRES sent false loan application documents to Victim Bank 1 in order to apply for a loan for Customer 1.

7. It was further part of the conspiracy that TORRES and Coconspirator 1 exchanged numerous emails regarding the creation of paperwork showing false occupations and fictitious salaries in order to make loan applicants falsely appear to have a greater ability to repay loans. TORRES, Coconspirator 1, and others submitted those documents to Victim Banks in order to obtain loans.

8. It was further part of the conspiracy that, as a result of the foregoing conduct, Victim Banks, including Victim Bank 1 and Victim Bank 2, suffered total losses of at least approximately $4,500,000.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture, pursuant to Title 18, United States Code, Section 982(a)(2).

2. The United States hereby gives notice to defendant TORRES that, upon his conviction of the offense alleged in Count One of this Information, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such an offense to forfeit any property, real or personal, which constitutes or is derived from proceeds obtained directly or indirectly as a result of such offense.

3. If any of the above-described forfeitable property, as a result of any act or omission of defendant TORRES:

  a. Cannot be located upon the exercise of due diligence;

  b. Has been transferred or sold to, or deposited with, a third party;

  c. Has been placed beyond the jurisdiction of the court;

  d. Has been substantially diminished in value; or

  e. Has been commingled with other property which cannot be divided without difficulty;

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of defendant TORRES up to the value of the forfeitable property described above.

*Craig Carpenito*

CRAIG CARPENITO
United States Attorney

CASE NUMBER: 19-

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

RAYMUNDO TORRES

**INFORMATION FOR**

18 U.S.C. § 1349

**CRAIG CARPENITO**
UNITED STATES ATTORNEY
NEWARK, NEW JERSEY

ARI B. FONTECCHIO & STEPHEN FERKETIC
ASSISTANT U.S. ATTORNEY
973-645-2745

USA-48AD 8
(Ed. 1/97)